PEARCE, a Minor, et al., Appellees and Cross–Appellants,

v.

FOUAD et al.; Kmart Corporation, Appellant and Cross–Appellee.

[Cite as Pearce v. Fouad, 146 Ohio App.3d 496, 2001–Ohio–3986.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–837.

Decided Nov. 29, 2001.

Mazanec, Raskin & Ryder Co., L.P.A., Edwin J. Hollern and David A. Goldstein, for appellee and cross-appellant, Melody Pearce.

Chester, Willcox & Saxbe LLP, Stephen C. Fitch, J. Craig Wright and Kirk A. Lindsey, for appellant and cross-appellee, Kmart Corporation.

KENNEDY, Judge.

{¶1} Defendant-appellant, Kmart Corporation, appeals from a judgment of the Franklin County Court of Common Pleas awarding plaintiff-appellee, Melody Pearce, $3,100,306.18 on her products liability claims. Plaintiff cross-appeals from the judgment.

{¶2} This action arises out of a fire that occurred in an apartment located at 6210 Ambleside Drive in Columbus, Ohio, on October 3, 1995. At the time of the fire, plaintiff, then only sixteen months old, resided in the apartment with her mother, Sheila Perry, her father, William Pearce, and her three older sisters, Melissa, Krista, and Kathryn Pearce. Plaintiff was severely burned in the fire, sustaining third-degree burns over forty percent of her body. Krista and Kathryn Pearce received minor injuries in the fire, and Melissa Pearce was not injured.

{¶3} On January 24, 1997, plaintiff, together with her mother, father and two injured sisters, filed suit in the Franklin County Court of Common Pleas against Hussein and Nancy Fouad, Advanced Realty Management, Inc. ("ARM"), and Kmart Corporation in connection with the apartment fire that injured the three children. Plaintiffs' complaint alleged that the apartment fire, which injured Melody, Krista, and Kathryn, was caused by a defective sixteen-inch, oscillating fan that their father had purchased at Kmart, and by the Fouads', the owners of the apartment complex, and ARM's, the property manager of the apartment complex, failure to ensure that the apartment had a properly working smoke detector as required by state and local building codes. Based upon these allegations, plaintiffs' complaint asserted strict products liability claims against Kmart for misrepresentation, defective manufacture, defective design, and failure to warn, negligence claims against the Fouads and ARM, and sought compensato-

ry and punitive damages. Prior to going to trial, Melody's father and mother dismissed their claims; Melody, Krista, and Kathryn settled their claims against the Fouads and ARM for a total of $1,000,000; and Krista and Kathryn settled their claims against Kmart.

{¶4} On December 10, 1998, plaintiffs moved for summary judgment against Kmart on the issue of liability. The trial court denied this motion on March 18, 1999.

{¶5} Beginning on April 5, 1999, as sole remaining plaintiff, Melody's product liability claims against Kmart were tried to a jury. At the close of plaintiff's case-in-chief, the trial court granted a directed verdict for Kmart on plaintiff's prayer for punitive damages. At the close of Kmart's case-in-chief, the trial court granted a directed verdict for plaintiff on the issue of liability with respect to her misrepresentation and manufacturing defect claims.[1] Thereafter, the issue of damages was submitted to the jury. On April 12, 1999, the jury returned a verdict for plaintiff in the amount of $4,100,306.18. On April 16, 1999, the trial court filed a judgment entry in which it reduced the jury's award by $1,000,000, the amount which Melody, Krista and Kathryn received from their settlements with the Fouads and ARM, and entered judgment for plaintiff and against Kmart in the amount of $3,100,306.18.

{¶6} On April 21, 1999, plaintiff filed a motion for prejudgment interest, costs and expenses. On April 30, 1999, Kmart filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court filed an entry denying Kmart's motion for judgment notwithstanding the verdict or a new trial on July 9, 1999. On August 30,1999, Kmart filed a notice of appeal. However, because the trial court had not yet ruled on plaintiff's motion for prejudgment interest, costs, and expenses, we dismissed the appeal in *Pearce v. Advanced Realty Mgt., Inc.* (Apr. 20, 2000), Franklin App. No. 99AP–990, 2000 WL 424002, for lack of a final appealable order.

{¶7} On June 8, 2000, the trial court issued a judgment in which it granted plaintiff prejudgment interest from the time of a pretrial conference held on November 16, 1998, and awarded plaintiff $47,512.50 in attorney fees, and $1,331.36 in expenses. On June 27, 2000, the trial court entered a final judgment in the case. Kmart appeals therefrom assigning the following errors:

{¶8} *"Assignment of Error One—*The trial court erred in granting plaintiff-appellee's motion for directed verdict on the liability of Kmart Corporation.

---

1. Plaintiff did not move for a directed verdict on their design defect and failure-to-warn products liability claims. These claims were not submitted to the jury and are not at issue in this appeal.

{¶9} *"Assignment of Error Two*—The trial court erred in failing to grant defendant-appellant judgment notwithstanding the verdict on all of plaintiff-appellee's claims.

{¶10} *"Assignment of Error Three*—The trial court erred in granting plaintiff-appellee's motion for prejudgment interest.

{¶11} *"Assignment of Error Four*—The trial court erred in granting plaintiff-appellee's motion for expenses under Ohio Rule of Civil Procedure 37(C)."

{¶12} Plaintiff cross-appeals from the judgment of the trial court assigning the following errors:

{¶13} "I. The trial court abused its discretion when it held that K–Mart Corporation was entitled to a setoff for the amount of plaintiff's settlement with defendant Hussein Fouad.

{¶14} "II. The trial court erred when it overruled plaintiffs' motion for partial summary judgment on the issue of liability.

{¶15} "III. The trial court erred when it granted a directed verdict in favor of K–Mart on the punitive damage claim.

{¶16} "IV. The trial court abused its discretion when it excluded from evidence K–Mart's actual knowledge of the importation and sale of defective oscillating fans.

{¶17} "V. The trial court abused its discretion when it refused to permit plaintiff's counsel to inquire into K–Mart's pre-fire knowledge of the sale and importation of defective oscillating fans and the recall of those fans.

{¶18} "VI. The trial court abused its discretion when it refused to admit exhibit 74 into evidence.

{¶19} "VII. The trial court erred when it refused to permit plaintiff to use the admission of K–Mart at trial that the latter had actual knowledge of defective Chinese fans being purchased and sold by K–Mart to consumers without any warning of fire hazards.

{¶20} "VIII. The trial court abused its discretion by limiting its award of prejudgment interest only back to the date of the mediation proceeding rather than back to the date that the cause of action accrued.

{¶21} "IX. The trial court abused its discretion by failing to award plaintiff $36,144.31 in expenses associated with proving those facts not admitted by K–Mart pursuant to requests for admission."

{¶22} Kmart's first assignment of error challenges the trial court's grant of a directed verdict for plaintiff on the issue of liability, while Kmart's second assignment of error challenges the trial court's denial of Kmart's motion for

judgment notwithstanding the verdict on the issue of liability. Because the legal standard for granting a motion for a directed verdict pursuant to Civ.R. 50(A) is the same as that for granting a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B), *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271, these two assignments of error will be addressed together.

{¶23} In reviewing a motion for a directed verdict or a motion for judgment notwithstanding the verdict, the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is competent evidence to support the nonmoving party's side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either a motion for a directed verdict or judgment notwithstanding the verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶24} Kmart first challenges the trial court's grant of a directed verdict for plaintiff on both her manufacturing defect and misrepresentation claims on the grounds that the evidence created a jury question on the issue of causation. At trial, the expert testimony established that the fire started in plaintiff's bedroom in an area next to a wall, and between a dresser and the bedroom closet doorway. The testimony and exhibits further established that the remains of two fans, the sixteen-inch, oscillating fan sold by Kmart and another smaller fan, were found at the location where the fire started. Also, a single electrical cord was found leading from an outlet behind the dresser to the area where the fan remains were found. The experts all agreed that one of the two fans had caused the fire, but because the fire severed the electrical cord from the fan to which it had been attached, the experts were unable to determine which fan had caused the fire. However, plaintiff's mother testified that the smaller fan was inoperable at the time of the fire. According to plaintiff's mother, plaintiff's father had removed the electrical cord from the smaller fan several years earlier in order to repair another appliance and had kept the rest of the fan for parts. Plaintiff's mother further testified that, because the family had only recently moved into the apartment, many of the family's belongings were still in boxes and that the smaller fan had been in such a box in plaintiff's bedroom closet. Plaintiff's mother could not explain how the smaller fan ended up on the floor next to the dresser, except to guess that one of the girls had removed it from the box to play with it. Based upon this testimony, the trial court concluded that the smaller fan could be eliminated as the cause of the fire, as it lacked a cord with which to plug

it into an outlet, and that, by the process of elimination, the sixteen-inch, oscillating fan sold by Kmart was the only possible cause of the fire.

{¶25} Although Kmart presented no evidence to contradict plaintiff's mother's testimony that the smaller fan was inoperable as a result of having had its cord removed, and did not challenge plaintiff's mother's credibility on the point, Kmart argues that plaintiff's mother's testimony created a jury question on causation, as the jury would have been free to disbelieve plaintiff's mother.

{¶26} It is well established that a trial court is not to consider the credibility of witnesses in resolving a motion for a directed verdict. *Posin.* Credibility concerns generally arise in the context of a motion for a directed verdict where the testimony of witnesses is in conflict concerning a factual issue. In such circumstances, it is readily apparent that the resolution of the factual issue will turn, at least in part, upon the credibility of the competing witnesses, and that granting a directed verdict in such circumstances would be inappropriate. However, credibility concerns can also be present where the evidence supporting the party moving for a directed verdict appears to be uncontroverted. This will be the case where the resolution of a factual issue raised on a motion for a directed verdict turns on uncontroverted testimony, but the circumstances surrounding the testimony place the testifying witness's credibility in question. *Hassan v. Progressive Ins. Co.* (2001), 142 Ohio App.3d 671, 676, 756 N.E.2d 745. For example, uncontroverted testimony may be disbelieved where the witness has an interest in the litigation, the witness's story is improbable, or there are contradictions in the witness's testimony. Id.; *Vlahos v. Pendergrass* (May 5, 1992), Franklin App. No. 91AP–1319, 1992 WL 97784. In such cases, the credibility of the witness should be resolved by the trier of fact and not on a motion for directed verdict. *Hassan.*

{¶27} Here, while we make no pronouncement whatsoever regarding the credibility of plaintiff's mother, it is clear that she has a significant interest in the outcome of this litigation. Accordingly, her credibility on the issue of the inoperability of the smaller fan was a question that should have been resolved by the jury. The trial court erred in granting a directed verdict for plaintiff on the issue of liability.

{¶28} Having determined that the trial court erred in granting a directed verdict for plaintiff on the issue of liability, we turn to Kmart's claim that the trial court should have granted its motion for judgment notwithstanding the verdict on the issue of liability. According to Kmart, the trial court should have granted its motion for judgment notwithstanding the verdict on plaintiff's manufacturing defect and misrepresentation claims, as plaintiff failed to present any evidence on at least one element of both claims.

{¶29} Plaintiff's manufacturing defect claim seeks to hold Kmart liable for a manufacturing defect as the supplier of the sixteen-inch, oscillating fan pursuant to R.C. 2307.78(B)(7). R.C. 2307.71(O)(1)(a) defines a "supplier" as "[a] person that, in the course of a business conducted for the purpose, sells * * * or otherwise participates in the placing of a product in the stream of commerce[.]" R.C. 2307.78(B) provides:

{¶30} "(B) A supplier of a product is subject to liability for compensatory damages based on a product liability claim * * * as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code * * *.

{¶31} "* * *

{¶32} "(7) The supplier in question marketed that product under its own label or trade name[.]"

{¶33} R.C. 2307.73(A) provides:

{¶34} "A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, both of the following:

{¶35} "(1) * * * [T]he product in question was defective in manufacture or construction as described in 2307.74 of the Revised Code * * *;

{¶36} "(2) A defective aspect of the product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages."

{¶37} Finally, R.C. 2307.74 provides:

{¶38} "A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction."

{¶39} Plaintiff's manufacturing defect claim under these sections asserts that Kmart was the supplier of the fan in question, that Kmart sold the fan under its own trade name, and that the product was defective in manufacture in that it deviated from a design specification requiring it to meet UL safety guidelines for electric fans when it was sold by Kmart. Prior to trial, Kmart admitted the following facts relevant to plaintiff's claims: (1) plaintiff's father purchased the sixteen-inch, oscillating fan, which plaintiff alleges started the fire, at Kmart in

May 1995; (2) all fans purchased by Kmart for the 1994 and 1995 seasons were sold under the Kmart trade name "Comfort Edge"; and (3) all Comfort Edge fans sold by Kmart during the 1995 season were required to comply with UL safety guidelines for electric fans and were labeled "UL LISTED." Kmart contends, however, that plaintiff failed to present any evidence that the sixteen-inch, oscillating fan was defective when "it left the control of its manufacturer," as required by R.C. 2307.74. We disagree.

{¶40} It is true that plaintiff provided no direct evidence that a defect in the sixteen-inch, oscillating fan caused the fire, or that such a defect was present when the fan left the control of its manufacturer. However, it is well settled that the existence of a manufacturing defect may be established by circumstantial evidence. *Colboch v. Uniroyal Tire Co., Inc.* (1996), 108 Ohio App.3d 448, 670 N.E.2d 1366. Here, the expert testimony, together with plaintiff's mother's testimony, established that the fire in plaintiff's bedroom was caused by something impeding the blades of the sixteen-inch, oscillating fan, which impedance caused the motor to stop and overheat. The expert testimony further established that UL safety guidelines for electric fans require such fans to be protected against overheating either by the installation of a thermal cutoff switch or an impedance-protected motor design. Finally, plaintiff's expert testified that an electric fan that has a properly functioning thermal cutoff switch or a properly functioning impedance-protected motor will not cause a fire. Defendant's expert did not offer an opinion as to the cause of the fire. Together, this evidence provides sufficient circumstantial evidence to allow a jury to find that, but for a defect which was present when the sixteen-inch, oscillating fan left its manufacturer, the fire would not have occurred. See *Colboch* (holding that expert testimony that "defect-free tires do not usually explode" was sufficient to overcome the defendant's motion for a directed verdict).

{¶41} Because a jury finding that a manufacturing defect in the sixteen-inch, oscillating fan caused the fire will independently support a verdict for plaintiff on liability, we need not address Kmart's argument that plaintiff failed to present sufficient evidence on her misrepresentation claim. The trial court properly denied Kmart's motion for judgment notwithstanding the verdict.

{¶42} Kmart's first assignment of error is sustained and its second assignment of error is overruled.

{¶43} Our resolution of Kmart's first and second assignments of error renders Kmart's third and fourth assignments of error and plaintiff's first, third, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error moot. App.R. 12(A)(1)(c). Thus, only plaintiff's second assignment of error remains to be addressed.

{¶44} Plaintiff's second assignment of error asserts that the trial court erred in denying plaintiff's motion for summary judgment on the issue of liability. It is well established that any error by a trial court in denying a motion for summary judgment on a question of fact is rendered harmless by a subsequent trial on the same issue. *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, paragraph one of the syllabus; *Kader v. Nixon* (Oct. 11, 2000), Lorain App. No. 99CA007307, 2000 WL 1507918. Accordingly, we need not address the merits of plaintiff's second assignment of error.

{¶45} Plaintiff's second assignment of error is overruled.

{¶46} Having sustained Kmart's first assignment of error, overruled Kmart's and plaintiff's second assignments of error, and found all remaining assignments of error to be moot, we reverse the judgment of the trial court and remand this matter to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PETREE, JJ., concur.