OPINION
{¶ 1} Plaintiff-appellant, Carol Fought Dickinson, appeals from a judgment of the Franklin County Court of Common Pleas entered on a jury verdict in favor of defendants-appellees, Charter Oaks Tree 
Landscaping Co., Inc. ("Charter Oaks"), Phil Mallory, and Marlee Snowdon, on plaintiff's claims of trespass and destruction of vegetation. Defendants Charter Oaks and Mallory cross-appeal the trial court's overruling their motion for a directed verdict on the issue of damages.
 {¶ 2} In October 1997, Marlee Snowdon and her husband, Richard Snowdon, moved into their home on Columbia Street in Bexley, Ohio, next door to plaintiff, Carol Dickinson, and her husband, Hal Dickinson. Carol Dickinson had lived in her home for 30 years; Hal Dickinson had lived there for 10 to 15 years, after he and plaintiff married. Carol Dickinson owned the property before she married Hal Dickinson and, pursuant to a prenuptial agreement, Hal Dickinson had no ownership interest in the property. According to plaintiff, she managed the Dickinson property, made all the decisions regarding the property, and never had any discussions with the Snowdons about who owns her property.
 {¶ 3} In the spring of 1998, the Snowdons decided to clean out substantial vegetation overgrowth in their back yard and along the side of their property that abuts the Dickinson property to the north. Marlee Snowdon testified that after she and her husband decided to do the work, her husband told her he had spoken with and received permission from Hal Dickinson to clean out the vegetation overgrowth; the permission was given after the two men walked the joint property line together and Richard Snowdon pointed out to Hal Dickinson what the Snowdons wanted to do. According to Marlee Snowdon, she then contacted Phil Mallory of Charter Oaks to do the clearing and landscaping work. Mallory is the primary owner of Charter Oaks, which performs full landscaping services, such as removing and planting trees, bushes, and plants.
 {¶ 4} Mallory testified Marlee Snowdon contracted with him for the landscaping services and told him the Dickinsons had given their consent to removing vegetation along the border between the properties. Mallory stated the normal practice within the landscaping business is to rely on the representations of the contracting party as it relates to the consent of adjoining landowners. After receiving instructions from Marlee Snowdon on what vegetation to remove, Charter Oaks began removing the vegetation between the Dickinson and Snowdon property on July 20, 1998. Mallory described the vegetation as "dense and overgrown, tremendous amount of dead wood." (Tr. 266.)
 {¶ 5} According to Mallory, as Charter Oaks was running chippers and performing its work the first day, he noticed Mr. Dickinson come out into the yard, walk around, looking "like he was somewhat interested in the procedure that we were doing," and then go back into the house. (Tr. 266-267.) Mallory testified he did not meet the Dickinsons until the next day, after Carol Dickinson returned from an out-of-town trip, became upset upon discovering the vegetation removed from her property, and tried to stop the work.
 {¶ 6} On June 2, 1999, plaintiff filed a complaint in common pleas court seeking recovery of damages from defendants for trespassing upon her property and cutting down, destroying and removing trees, shrubs and other vegetation. Plaintiff claimed she did not authorize or consent to defendants' entering onto her property or performing the landscaping work on her property.
 {¶ 7} Conceding plaintiff did not personally give permission for landscaping work to be done on her property, defendants contended their actions on plaintiff's property nonetheless were privileged; defendants claimed they had relied on the apparent authority of plaintiff's husband, Hal Dickinson, to act as plaintiff's agent regarding landscaping matters and to give consent to the removal of trees, shrubs and vegetation from plaintiff's property.
 {¶ 8} In motions for summary judgment, directed verdict, and judgment notwithstanding the verdict, plaintiff argued no evidence indicated that she had represented her husband was her agent, or that he had actual or apparent authority to give permission to anyone to enter upon plaintiff's property to destroy vegetation on the property. Thus, plaintiff contended, she was entitled to judgment in her favor, as a matter of law, on the issue of liability. The trial court denied plaintiff's motions, finding genuine issues of material fact existed prior to trial, and sufficient competent evidence was presented at trial, regarding Hal Dickinson's apparent authority to consent to landscaping work on plaintiff's property.
 {¶ 9} On January 7, 2002, following a three-day trial, a jury rendered a verdict in favor of defendants, with the jury expressly finding defendants had not entered upon plaintiff's land without permission and had not cut down plaintiff's vegetation recklessly and without privilege to do so. (January 7, 2002 Verdict and Interrogatories.) After denying plaintiff's motions for new trial and judgment notwithstanding the verdict, the trial court entered judgment on August 12, 2002 in accordance with the jury's verdict.
 {¶ 10} Plaintiff appeals, assigning the following errors:
 {¶ 11} "1. The trial court erred in overruling the motion of Plaintiff Carol Fought Dickinson for partial summary judgment as to liability with respect to Defendants Phillip Mallory and Charter Oaks Tree Landscaping Co., Inc.
 {¶ 12} "2. The trial court erred in overruling the motion of Plaintiff Carol Fought Dickinson for partial summary judgment as to liability with respect to Defendant Marlee Snowdon.
 {¶ 13} "3. The trial court erred in overruling the motion of Plaintiff Carol Fought Dickinson for a directed verdict upon the issue of liability and apparent authority and in overruling the motion for judgment notwithstanding the verdict with respect to Defendants Phillip Mallory and Charter Oaks Tree Landscaping Co., Inc.
 {¶ 14} "4. The trial court erred in overruling the motion of Plaintiff Carol Fought Dickinson for a directed verdict upon the issue of liability and apparent authority and in overruling the motion for judgment notwithstanding the verdict with respect to Defendant Marlee Snowdon.
 {¶ 15} "5. The trial court erred in submitting the alleged issue of apparent authority to the jury since there was no evidence supporting a finding of apparent authority (or apparent agency) and giving the instruction misled the jury to believe the evidence supported a finding of apparent authority."
 {¶ 16} Defendants Charter Oaks and Mallory assign the following error on cross-appeal:
 {¶ 17} "1. The trial court erred in overruling the motion of defendants-cross-appellants for a directed verdict on the issue of damages."
 {¶ 18} Plaintiff's appeal largely is resolved in the disposition of plaintiff's third, fourth, and fifth assignments of error, in which plaintiff asserts the trial court erred in overruling plaintiff's motions for directed verdict and judgment notwithstanding the verdict on the issue of liability and apparent authority. Accordingly, we first address those assignments of error.
 {¶ 19} In reviewing a denial of a motion for judgment notwithstanding the verdict, an appellate court applies the same test it applies in reviewing a motion for a directed verdict. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 679. When considering a motion for a directed verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. Civ.R. 50(A). A motion for a directed verdict raises questions of law, not factual issues, because it tests the legal sufficiency of the evidence to take the case to the jury. Id. at 679-680; Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119. The court's disposition of the motion does not involve weighing the evidence or the credibility of the witnesses. Id. The court must deny the motion where any evidence of substantial probative value favors the nonmoving party, and reasonable minds might reach different conclusions on that evidence. Id.; Strother v. Hutchinson (1981), 67 Ohio St.2d 282,284-285.
 {¶ 20} As she asserted in the trial court, plaintiff contends on appeal that, after construing all the evidence in favor of defendants, reasonable minds could not conclude plaintiff's husband was acting as plaintiff's agent. Plaintiff asserts that, even if her husband consented to defendants performing such activity on plaintiff's property, defendants could not rely on her husband's representations to establish the existence of an agency relationship between plaintiff, as principal, and her husband, as plaintiff's agent.
 {¶ 21} Rather, plaintiff contends an essential element of apparent agency is evidence the alleged principal by the principal's own words or conduct represented to the public that a person is the principal's agent with authority to act on behalf of the principal. Plaintiff asserts no evidence was presented in this case that plaintiff, by her own statements, conduct, and actions, held her husband out to the public as her agent with actual or apparent authority to permit to anyone to enter upon plaintiff's property without her knowledge or express consent and to cut down, remove and destroy trees, shrubs and other vegetation growing on her property. Without such evidence, plaintiff contends, the trial court erred in failing to direct a verdict for plaintiff on the issue of defendants' liability.
 {¶ 22} The existence of an agency relationship is a question of fact, rather than one of law. McSweeney v. Jackson (1996),117 Ohio App.3d 623, 631. If any evidence of an agency relationship between plaintiff and her husband was presented, the trial court properly denied plaintiff's motions which sought to resolve the issue as a matter of law.
 {¶ 23} No presumption of agency between a husband and wife arises based merely upon their marital relationship. Id. at 630; Sowers v. Birkhead (1958), 108 Ohio App. 507, 512. Although marriage in itself does not create an agency relationship between a husband and wife, an agency can exist within the context of a marriage. See, e.g., Ameritech Publishing, Inc. v. Jenkins (Aug. 25, 1993), Montgomery App. No. 13698 (determining a husband gave apparent authority to his wife to authorize an advertisement by suggesting that a saleswoman call his wife and "she will handle it").
 {¶ 24} An agency relationship may be created either by an express grant of authority, or by implication or estoppel, the latter often being referred to as apparent agency or agency based on apparent authority. Master Consolidated Corp. v. BancOhio Natl. Bank (1991), 61 Ohio St.3d 570,574. See Evans v. Ohio State Univ. (1996), 112 Ohio App.3d 724, 744, appeal not allowed, 77 Ohio St.3d 1494 ("The doctrines of agency by estoppel and apparent authority are equivalent and are based upon the same elements"). The latter type of agency is at issue here.
 {¶ 25} In order to establish an agency relationship based on apparent authority, the evidence must affirmatively show (1) the alleged principal held the alleged agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. Master Consolidated at syllabus. The authority of an agent is determined by the acts of the principal, not the acts of the agent. Id. at 576. However, an apparent agency relationship can arise where an agent is shown to have authority because the principal has permitted and approved his prior similar acts. Levin v. Nielsen (1973),37 Ohio App.2d 29, 32. Where third persons rely in good faith on the agent's apparent authority, the principal is bound by the agent's acts falling within the scope of that authority. S-S-C Co. v. Hobby Center, Inc. (Dec. 4, 1992), Lucas App. L-92-049.
 {¶ 26} At trial, Carol Dickinson testified she first met Mr. and Mrs. Snowdon in June 1998 when Hal Dickinson, who preceded her outside, was working in the yard. At times, Mr. Dickinson worked in the yard alone, and at other times he and Mrs. Dickinson worked in the yard together. Confirming he was doing yard work when he met the Snowdons, Hal Dickinson testified he told Richard Snowdon upon their first meeting that he was trimming bushes, clearing out deadwood and weeds, and ripping out ivy, including poison ivy, which he described as "quite an operation." (Tr. 397-398.) Hal Dickinson testified he again was doing yard work removing the roots of a "treacherous plant" next to the Snowdon's driveway when he had a subsequent discussion with Richard Snowdon regarding landscaping and vegetation removal the Snowdons were planning on doing.
 {¶ 27} Richard Snowdon testified he frequently observed Hal Dickinson working in the yard. He specifically recalled seeing Mr. Dickinson dealing with contractors who came onto plaintiff's property, including a tree contractor who did some cabling work on the Dickinson trees. Although Richard Snowdon was uncertain whether he observed the activity before or after July 20, 1998, plaintiff testified she had Davey Tree Service in on July 15, 1998 to check the cabling in the trees, which was prior to the time the vegetation in question was removed.
 {¶ 28} Richard Snowdon explained that the purpose of his second conversation with Hal Dickinson in the yard was to discuss the Snowdon's plan to clean out vegetation in the area along their joint property line and to get the Dickinson's permission to remove it because the Snowdons were uncertain on whose property the vegetation was growing. Richard Snowdon testified Hal Dickinson told him it would be "fine" to do the work, and Snowdon came away from the conversation with the belief and understanding the Snowdons had permission to go onto the Dickinson property to do the intended work. Richard Snowdon told his wife about his conversation with Hal Dickinson and that Hal Dickinson had granted the Snowdons permission to enter onto the Dickinson property to remove the vegetation. Richard Snowdon further testified that sometime during the week before the vegetation in question was removed, Hal Dickinson "cornered" him and "accusingly" suggested Snowdon had made a proposal to do the work and was not going to fulfill it. Richard Snowdon testified he told Hal Dickinson that a company was coming do the work.
 {¶ 29} With the evidence construed in favor of defendants and the two-step test of Master Consolidated applied, the record contains competent evidence to support a reasonable conclusion that Hal Dickinson had apparent authority to grant permission to defendants to enter upon plaintiff's property and to remove vegetation.
 {¶ 30} Specifically the evidence shows that not only did Hal Dickinson work frequently in the Dickinson yard, both alone and with Carol Dickinson, but he trimmed and removed vegetation from the Dickinson property, including the area along the joint property line with the Snowdons. Notably, other evidence revealed Hal Dickinson dealt with contractors, including a tree service Carol Dickinson hired that performed work on the Dickinson property. No evidence suggested the Snowdons were advised Hal Dickinson had limited or no authority to make decisions regarding landscaping matters on the Dickinson property. With that evidence, a reasonable inference could be made that Carol Dickinson knowingly permitted Hal Dickinson to act as having apparent authority over landscaping matters on the Dickinson property, thus satisfying the first element of the test in Master Consolidated.
 {¶ 31} With regard to the second element of the Master Consolidated test, the evidence suggests that, based on his observations of Hal Dickinson's activities in the yard and his conversations with Hal Dickinson, Richard Snowdon in good faith believed Hal Dickinson had apparent authority to make landscaping decisions and to give permission to the Snowdons and their agent, Charter Oaks, to enter onto the Dickinson property to remove vegetation in the area of their joint property line. Moreover, the evidence indicates Marlee Snowdon acted in good faith, based on information from her husband regarding Hal Dickinson's apparent authority, in contracting with and directing Charter Oaks, the Snowdons' express agent, to remove the vegetation. The foregoing evidence was competent and satisfies the second element of the test in Master Consolidated.
 {¶ 32} Defendants are not liable for trespass or destruction of vegetation if they were privileged, by receiving the consent of Carol Dickinson or her agent, to enter onto the Dickinson property and remove the vegetation. See Apel v. Katz (1998), 83 Ohio St.3d 11, 19 (holding a person commits trespass upon real property only when the person, without authority or privilege, physically invades or unlawfully enters another's private premises and causes damage). See, also, R.C. 901.51 (providing that a person is prohibited from removing vegetation from another's property only if the person is "without privilege to do so").
 {¶ 33} Because competent evidence was presented at trial to support a reasonable conclusion that Hal Dickinson was Carol Dickinson's agent and had apparent authority to give consent to defendants to enter onto the Dickinson property and to remove vegetation, the trial court properly denied plaintiff's motions for directed verdict and judgment notwithstanding the verdict on plaintiff's claims of trespass and destruction of vegetation. Accordingly, plaintiff's third, fourth and fifth assignments of error are overruled.
 {¶ 34} Remaining for resolution are plaintiff's first two assignments of error. Together they assert the trial court erred in denying plaintiff's motion for summary judgment on the issue of liability, thus improperly allowing the issue to proceed to trial for the jury's decision.
 {¶ 35} Any error by the trial court in denying plaintiff's motion for summary judgment is rendered moot or harmless by the subsequent trial on this issue where, based on competent evidence, the jury properly decided the issue in favor of defendants. Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150, syllabus; Pearce v. Fouad (2001),146 Ohio App.3d 496, 504, stay granted on other grounds (2002),94 Ohio St.3d 1483. Accordingly, plaintiff's first and second assignments of error need not be addressed and are overruled.
 {¶ 36} Having overruled all of plaintiff's assignments of error, we affirm the trial court's judgment, rendering moot the remaining assignment of error, raised on cross-appeal, concerning denial of a directed verdict in defendants' favor on the issue of damages.
Judgment affirmed.
TYACK and LAZARUS, JJ., concur.