OPINION
{¶ 1} Plaintiffs-appellants, Eric Havely ("Mr. Havely"), and Donna Havely, individually and as guardian for Mr. Havely (collectively, "appellants"), appeal from the judgment of the Franklin County Court of Common Pleas, in which that court granted summary judgment in favor of defendants-appellees, Franklin County Board of Mental Retardation and Developmental Disabilities ("FCMRDD"), Carol Thomas ("Thomas"), Mathias Kendricks ("Kendricks"), and Joanne Nunemaker ("Nunemaker") (collectively, "appellees").
 {¶ 2} The following facts and procedural history are taken from the admissible evidence and the record, and are undisputed unless otherwise noted. Mr. Havely is 35 years old and is mentally retarded and developmentally disabled. He has resided in an FCMRDD supported living residence for many years. Sometime between the late evening of February 1, 2000, and the early morning of February 2, 2000, Mr. Havely suffered multiple abrasions, contusions and other injuries to his face, arms, head, and buttocks. On the dates in question, Thomas, Kendricks, and Nunemaker were employees of FCMRDD, and were charged with assisting Mr. Havely and other residents of the facility with self-care, cooking, cleaning, and recreation, and with supervision and documentation of resident activities. Thomas worked from 2:00 p.m. to 10:00 p.m. on February 1st, Kendricks worked from 3:30 p.m. until 11:30 p.m. on February 1st, and Nunemaker worked from 11:30 p.m. on February 1st until 7:30 a.m. on February 2nd.
 {¶ 3} In her first affidavit and at her first deposition, Thomas testified that she last saw Mr. Havely on February 1, 2000, when she checked his room and he was sitting in *Page 3 
bed with the lights turned off. She had seen Mr. Havely earlier in the evening walking the halls, and Mr. Havely was not injured at that time. Thomas did not know how Mr. Havely was injured and she denied injuring him or seeing anyone else injure him. When she left the facility at the end of her shift, the only staff person on site was Kendricks.
 {¶ 4} Kendricks stated in his affidavit that he worked from 3:30 to 11:30 p.m. on February 1, 2000, and did not observe any injuries to Mr. Havely during his shift. He denied having any unusual physical contact with Mr. Havely, and denied assaulting him or otherwise causing his injuries. He also denied witnessing anyone else injuring Mr. Havely. At his deposition, Kendricks testified that when he left at the end of his shift, Nunemaker had just arrived to begin her shift. Kendricks testified that he first became aware of Mr. Havely's injuries when he was awakened by a telephone call from one of his superiors, at about 7:00 a.m., asking what had happened to Mr. Havely. He did not know anything about the injuries and drove to the facility to see Mr. Havely himself. He stated that Mr. Havely's injuries were "quite severe" and he had never seen injuries like that before. (Kendricks Depo. #1, at 34.) Kendricks denied knowing what happened to Mr. Havely. He stated that he had been in another resident's apartment between 5:00 and 8:00 that evening, and returned to Mr. Havely's apartment at 8:00. He stated that between 8:00 and 10:30 he "was sitting at the table there and doing the books" while Thomas cleaned around the common areas of the apartment. He observed Mr. Havely in the hallway during that time period, but never saw any injuries. Kendricks confirmed that Thomas had left at 10:00 p.m. that evening.
 {¶ 5} Later, Thomas submitted a supplemental affidavit, in which she averred that she wished to supplement her earlier testimony with information that she had recently *Page 4 
remembered. Specifically, she stated that between 9:00 and 10:00 p.m. on February 1, 2000, she heard Mr. Havely and Kendricks engaging in laughing and conversation in Mr. Havely's bedroom. She could not make out any words, and could not see them, but heard "sounds of playing, laughing, exertion[.]" (Thomas Supp. Aff. ¶ 3.) She stated that she "heard no sounds which would lead me to believe there was any crying, pain, unfriendly altercations, or injury." Id. Thomas stated that once the sounds ceased, she observed Mr. Havely and Kendricks exit Mr. Havely's room. Mr. Havely was sweating and there was some "redness" on the right side of his face near his temple. However, she saw "no broken skin, no scar, no blood, no scratches, and Mr. Havely was not crying, did not seem angry, upset, injured or hurt." Id. She stated that she had no reason to believe that Mr. Havely was hurt or that anything inappropriate had occurred.
 {¶ 6} During a follow-up deposition, Thomas testified that what she meant by "sounds of exertion" in her affidavit was that she heard Mr. Havely and Kendricks sounding "out of breath." (Thomas Depo. #2, at 10.) She stated that she thought the two men were play-wrestling. She did not hear any bumps or glass breaking, and the sounds lasted only for a few moments. When the men exited the bedroom, neither of them looked disheveled. She heard Mr. Havely using profanity, but, she stated, this was normal behavior for him.
 {¶ 7} When Kendricks was deposed again, following the submission of Thomas' supplemental affidavit, Kendricks denied being in Mr. Havely's room playing or laughing or exerting himself. He denied giving Mr. Havely a red abrasion on his face. He did not hear the noises that Thomas said she heard. He testified that if he had seen Mr. Havely *Page 5 
after 9:00 p.m., it would have been from too far away to notice whether he had any redness on his face.
 {¶ 8} In her affidavit, Nunemaker states that she worked the night shift, beginning at 11:30 p.m. on February 1, 2000. When she arrived, Mr. Havely was already in bed asleep. She checked on Mr. Havely during the night; he was snoring and there was no light on in the room. She heard no other noises from Mr. Havely's room during the night. When Mr. Havely awoke the next morning, Nunemaker observed his injuries. She stated that at no time prior to seeing his injuries that morning did she have any physical contact with him during her shift. She denied having any knowledge as to how he was injured. The record does not contain a deposition of Nunemaker.
 {¶ 9} Columbus Police Officer Michael West ("West") testified that he conducted an investigation of Mr. Havely's injuries after FCMRDD called police regarding the incident. He did not have the case file, however, because it had been destroyed by the time the deposition took place, pursuant to police department record retention policies. He testified only from memory. He remembered that, based on his training and experience, he believed that Mr. Havely's wounds were the result of intentional conduct, not an accident. This opinion was based upon the number and variety of wounds, and the fact that the wounds were on various surfaces and parts of the body, as opposed to just one or two "plains [sic]." However, the case was closed and no charges were ever filed due to insufficient evidence.
 {¶ 10} West could not say precisely how the injuries were inflicted or how old they were on February 2, 2000. West stated that his observations of Mr. Havely led him to conclude that Mr. Havely would not be competent to testify about what had happened. *Page 6 
The record also contains an affidavit from attorney Cheryl Ryan, who originally represented Thomas, Kendricks, and Nunemaker. Therein, Attorney Ryan avers that she attempted to depose Mr. Havely, but he was unable to give even his name, and merely uttered a string of profanities.
 {¶ 11} Appellants filed their complaint against appellees on February 1, 2001. Later, they amended their complaint. Appellants' first claim is for intentional battery. Appellants allege that Thomas, Kendricks, and Nunemaker "intentionally committed assault and battery against [Mr. Havely]." (First Amended Complaint, ¶ 4.) They also claim that these individuals "wantonly and maliciously inflicted bodily injury upon [him]." Id. at ¶ 5. Appellants' second claim is that these individuals "recklessly, wantonly, and maliciously" breached their "duty to protect [Mr. Havely's] physical well being, not cause him physical harm, and ensure his safety." Id. at ¶ 13-14. Their third claim is a claim for intentional infliction of emotional distress. In their fourth claim, appellants allege that FCMRDD "recklessly, wantonly, maliciously, and in bad faith entrusted, trained, supervised, and otherwise exercised their discretion regarding personnel, including" Thomas, Kendricks, and Nunemaker. For the fifth claim, Donna Havely asserted a claim for loss of consortium. Finally, in their sixth claim, appellants asserted a federal civil rights cause of action.
 {¶ 12} Following several years of motion practice and removal proceedings, on May 30, 2007, Thomas, Kendricks, and Nunemaker filed a joint motion for summary judgment, supported by affidavits from each. On May 31, 2007, FCMRDD filed its own motion for summary judgment with evidentiary support. On June 22, 2007, Thomas, Kendricks, and Nunemaker filed a motion to stay ruling on their motion for summary *Page 7 
judgment, citing a possible conflict of interest. On June 28, 2007, appellants filed a Civ. R. 56(F) motion for a continuance to respond to appellees' motions for summary judgment.
 {¶ 13} By separate notices dated July 6, 2007, July 10, 2007, and July 23, 2007, the attorney for Thomas, Kendricks, and Nunemaker withdrew. After obtaining new counsel, on August 22, 2007, Thomas filed a supplemental affidavit in support of her motion for summary judgment, and a notice of withdrawal of her earlier motion to stay ruling on her summary judgment motion. On August 29, 2007, Nunemaker filed a motion requesting that the court rule on her motion for summary judgment. On September 4, 2007, Kendricks filed a similar motion. On September 12, 2007, the trial court journalized an entry granting appellees' motions for withdrawal of their requests for a stay of the summary judgment proceedings.
 {¶ 14} On October 22, 2007, appellants filed a memorandum contra to the appellees' motions for summary judgment, supported by the affidavits of West, Thomas, and Kendricks. In addition, appellants submitted photographs of Mr. Havely's injuries and a copy of a memorandum purportedly written by FCMRDD investigator Gloria Hengen ("Hengen"). Appellants argued that their case "hinges on the quantum of evidence they can produce tending to attack the credibility of [Thomas and Kendricks] * * *." (Memorandum Contra, 2.) Appellants argued that "a substantial issue of the Individual Defendants' credibility, and specifically, that of Individual Defendants Kendricks' [sic] and Thomas create a genuine issue of material facts [sic] as to whether either or both Defendants caused [Mr. Havely's] injuries by assaulting him." Id at 8.
 {¶ 15} Appellants argued that the following facts demonstrate the existence of genuine issues of material fact precluding summary judgment: (1) Thomas and Kendricks *Page 8 
were the only two staff members on site during the time period in question; (2) West opined that Mr. Havely's injuries were not accidentally caused, but were the result of an assault; (3) Kendricks admitted that, during the investigation of this incident, he lied to a polygraph examiner about having conducted a bed check of Mr. Havely on the night in question, when he had not, in reality, conducted that bed check; (4) Thomas admitted that she had previously been disciplined by FCMRDD for a physical altercation with a co-worker; (5) prior to the incident in question, Mr. Havely had intentionally pulled and twisted on Thomas' arm with such force that he broke her arm; (6) Thomas submitted a supplemental affidavit with additional facts that she said she only remembered after reviewing her deposition transcript; and (7) Kendricks denied the facts contained in Thomas' supplemental affidavit.
 {¶ 16} On November 2, 2007, the trial court held an oral argument on the motions for summary judgment. By decision and entry journalized November 28, 2007, the trial court granted appellees' motions for summary judgment. The trial court determined, inter alia, that none of the exceptions to the general grant of immunity in R.C. 2744.02(A)(1) apply. It further found that FCMRDD is immune from liability for any intentional tortious acts of its employees, because such acts are outside the scope of employees' duties. The court further found that, while the individual appellees would not be immune from liability for any intentional tortious acts, summary judgment was nonetheless warranted because appellants had not met their reciprocal burden, under Civ. R. 56(E), to demonstrate a genuine issue of fact with respect to whether any of the individual appellees assaulted Mr. Havely.
 {¶ 17} Appellants appealed, and advance two assignments of error, as follows: *Page 9 
 I. The trial court erred in applying the standard for review for summary judgment to the facts presented and granting Appellees summary judgment.
 A. The trial court failed to apply the proper standard of review of the evidence submitted and specifically failed to view the evidence in the light most strongly in favor of the non-moving party.
 1. The trial court without guard [sic] accepted the entirety of the individual Appellees' testimony as true without considering the identified conflicting testimony offered by the individual Appellees and the apparent lack of credibility on Appellees Thomas and Kendricks['] behalf.
 2. The trial court did not consider all of the evidence submitted leading to its erroneous conclusion that Appellees were entitled to summary judgment.
 II. The trial court erred as a matter of law in granting Appellees' Motions for Summary Judgment on the grounds that as a political subdivision, and employees, they are entitled to the general grant of immunity in R.C. 2744.02(A)(1) and that Appellants' were unable to pierce the exceptions under R.C. 2744.02(B).
 {¶ 18} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ. R. 56(C); State ex rel. Grady v. State Emp.Relations Bd., 78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343. If the moving party has satisfied its initial burden under Civ. R. 56(C), *Page 10 
then "the nonmoving party * * * has a reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 19} We note at the outset that appellants have not made any argument on appeal with respect to their fourth claim for negligent hiring, training, and supervision, their federal civil rights claim or their claims against Nunemaker. Thus, we will not disturb the trial court's judgment with respect to these claims. Appellants have placed before us only the first and third claims against individual appellees Thomas and Kendricks, the second and third claims against FCMRDD, and the loss of consortium claim derivative of the first two claims.
 {¶ 20} Appellants' first assignment of error concerns the trial court's grant of summary judgment to Thomas and Kendricks on appellants' first and third claims, for intentional battery and intentional infliction of emotional distress, respectively.[1] Appellants argue that the trial court erred in granting appellees summary judgment because appellants raised "colorable and material issues of fact * * * as to whether [Mr. Havely] was assaulted * * *." (Brief of Appellants, 9.)
 {¶ 21} Each of the individual appellees testified, by affidavit and deposition, that he or she did not assault Mr. Havely. This is sufficient to meet these parties' initial burden *Page 11 
under Civ. R. 56(C) to demonstrate the absence of a genuine issue of material fact, because the essence of appellants' claim for intentional battery is that one or more of appellees assaulted Mr. Havely. This triggered appellants' reciprocal burden, under Civ. R. 56(E), to set forth specific facts showing that there is a genuine issue for trial.
 {¶ 22} Specifically, appellants maintain that because Thomas' supplemental affidavit contains information she says she remembered only after she made her first affidavit and submitted to her first deposition, this "does not support her credibility as a witness contrary to the trial court's interpretation." Id. They also argue that there is a genuine issue of fact as to whether Kendricks was in Mr. Havely's room on the night of February 1, 2000, because Kendricks testified that he was not, while Thomas stated, in her supplemental affidavit, that she saw him leave Mr. Havely's room that evening. Appellants argue that the trial court wrongly "believed" Kendricks' testimony, despite Kendricks having admitted that he lied to a police polygraph examiner about having done a bed check on Mr. Havely's room on the evening in question. Finally, they argue that the report of FCMRDD investigator Hengen contains statements and other information that directly contradicts appellees' evidence, and the trial court should have considered this evidence.
 {¶ 23} We begin with appellants' argument that the trial court erred in failing to consider the Hengen report, including statements referenced therein that were allegedly made by Mr. Havely to West, and then recounted by West to Hengen. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). *Page 12 
 {¶ 24} In the case of Guernsey Bank v. Milano Sports Ents.,L.L.C., Franklin App. No. 07AP-382, 2008-Ohio-2420, ¶ 59, we explained:
 When ruling upon a motion for summary judgment, a trial court only considers admissible evidence. Tokles Son, Inc. v. Midwestern Indemn. Co.
(1992), 65 Ohio St.3d 621, 631, fn. 4, 605 N.E.2d 936 ("Only facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment.") "Hearsay statements, unless an exception to the hearsay rule, are not admissible evidence in a summary judgment context." Paulino v. McCary, Franklin App. No. 04AP-1186, 2005-Ohio-5920, at ¶ 6, fn. 1.
(Some citations omitted.)
 {¶ 25} We note that, though Hengen's report may be admissible as a business record under Evid. R. 803(6), appellants have not presented any affidavit or deposition testimony from Hengen authenticating the document, as required by R.C. 2317.40. Thus, the report was inadmissible for lack of foundation. Benjamin v. KPMG Barbados, Franklin App. No. 03AP-1276, 2005-Ohio-1959, ¶ 22. Moreover, statements taken from individuals during the investigation, and summarized in Hengen's report, constitute hearsay within hearsay, and are only admissible if both the statement and the report fall within a recognized exception to the hearsay rule. Evid. R. 805. On the record before us, we find no error in the trial court's refusal to consider Hengen's report.
 {¶ 26} Apart from the Hengen report, appellants offer the following evidence to meet their reciprocal burden under Civ. R. 56(E): the fact that Thomas and Kendricks were the only FCMRDD employees on site during the time period in question; inconsistencies between Thomas' first affidavit and deposition, and her supplemental *Page 13 
affidavit and deposition; inconsistencies between Thomas' and Kendricks' testimony; and evidence that may bear upon those individuals' credibility. We will discuss each in turn.
 {¶ 27} The fact that Thomas and Kendricks were the only FCMRDD agents at Mr. Havely's apartment until Mr. Havely went to sleep on February 1, 2000, does not create an issue of fact precluding summary judgment. First, there was no evidence that Thomas and Kendricks were the only people at the apartment that evening; it is undisputed that other FCMRDD clients lived in the same apartment. Second, even if Thomas and Kendricks were the only individuals on site until Mr. Havely retired for the night, appellants' use of this fact to employ the doctrine of res ipsa loquitor is unavailing with respect to the claim for intentional battery.
 {¶ 28} In the case of Williams v. Lo, Franklin App. No. 07AP-949,2008-Ohio-2804, we explained:
 The doctrine of res ipsa loquitor is a rule of evidence that allows a plaintiff to prove negligence circumstantially upon showing the following: (1) the instrumentality that caused the harm was in the exclusive control of the defendants; and (2) the event that caused the harm was not of the type that would normally occur in the absence of negligence.
(Citation omitted.) Id. at ¶ 13. Because appellants' first claim is one for intentional tort, not negligence, the doctrine of res ipsa loquitor is inapplicable thereto.
 {¶ 29} Next, we conclude that the fact that Thomas remembered additional facts and put them in a supplemental affidavit does not impair her credibility when she denied that she knew how Mr. Havely received his injuries. The Supreme Court of Ohio has held, "[w]hen determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a *Page 14 
motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition." Byrd v.Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, paragraph one of the syllabus. If it is inconsistent, then it cannot be the basis upon which a court grants summary judgment. Id. at paragraph two of the syllabus. However, if it merely supplements the earlier testimony, then it is not inconsistent. Id. at paragraph three of the syllabus.
 {¶ 30} Here, in her supplemental affidavit, Thomas recounted hearing laughing, playing, and conversation coming from Mr. Havely's room between 9:00 and 10:00 p.m. on February 1, 2000, and when the sounds ceased, she saw Kendricks and Mr. Havely exit Mr. Havely's room. She stated that the sounds she heard did not sound unfriendly, injurious, or like an altercation. She stated that Mr. Havely was sweating and had redness on his right temple, but Thomas saw no bruises, scratches, cuts, or any other indication that Mr. Havely was injured. According to Thomas, Mr. Havely did not appear to be injured, upset, angry or hurt in any way. In our view, this information merely supplements, but does not contradict, Thomas' earlier affidavit and deposition testimony, in which she stated that she last saw Mr. Havely when he was sitting in bed in the dark, and that when she saw Mr. Havely earlier that evening, he showed no signs that he had been injured. Likewise, the later testimony does not contradict Thomas' earlier testimony that she did not witness anyone harming Mr. Havely, she did not harm Mr. Havely, and she does not know how he was injured. Accordingly, there is nothing in Thomas' supplemental affidavit or supplemental deposition testimony that precludes basing summary judgment on the totality of Thomas' testimony. *Page 15 
 {¶ 31} The next question for this court is whether inconsistencies between Thomas' and Kendricks' testimony preclude summary judgment on appellants' claim for intentional battery. In her supplemental affidavit and at her supplemental deposition, Thomas testified that on the evening of February 1, 2000, she saw Kendricks exit Mr. Havely's room after sounds of talking, laughing, and playing could be heard coming from Mr. Havely's room. She further testified that when Mr. Havely exited the room, he appeared sweaty and had a red mark on his right temple. Kendricks denies that he was in Mr. Havely's room on that evening.
 {¶ 32} The question is whether this discrepancy creates a genuine issue of material fact with respect to whether Kendricks intentionally assaulted Mr. Havely, causing the prominent abrasions and contusions to multiple parts of his body that were discovered the following morning. In our view, it does not, because Thomas specifically and unequivocally stated that the red mark on Mr. Havely's temple bore no resemblance to the injuries discovered the next morning, and that she saw "no broken skin, no scar, no blood, no scratches" and Mr. Havely did not appear injured in any way. That there is a dispute as to whether Kendricks was in Mr. Havely's room when laughing, talking, and playing sounds were heard, after which Mr. Havely had a red mark on his temple, does not, by itself, preclude summary judgment in favor of Kendricks on appellants' claim that Kendricks inflicted multiple serious wounds on Mr. Havely's head, face, arms, and buttocks. "[O]nly factual disputes that might affect the outcome of the suit under the governing law will preclude the entry of a summary judgment." Perez v. Scripps-Howard BroadcastingCo. (1988), 35 Ohio St.3d 215, 218-219, 520 N.E.2d 198, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248,106 S.Ct. 2505, 91 L.Ed.2d 202. *Page 16 
 {¶ 33} The final issue before this court under the first assignment of error is whether appellants have met their reciprocal burden, under Civ. R. 56(E), to counter appellees' denials with facts sufficient to preclude summary judgment because they call into question Thomas' and Kendricks' credibility. Specifically, Thomas admitted that she had been disciplined once by FCMRDD for a physical altercation with a coworker, and Mr. Havely had once asked Thomas to shake his hand and then pulled and twisted her arm until it broke. Kendricks admitted that, during a police polygraph examination, he initially lied to the examiner about whether he had performed a bed check of Mr. Havely on February 1, 2000, and only told the truth after he was informed that the polygraph machine indicated he was being deceptive.
 {¶ 34} First, we must determine whether these facts would be admissible. Evid. R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may clearly be used to prove other things such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 35} Evidence that Thomas had been disciplined for an altercation with a coworker would be inadmissible and is therefore not properly considered in summary judgment proceedings. Thomas' altercation with a person other than Mr. Havely is not admissible to prove that she acted similarly with Mr. Havely, and does not fall into any of the exceptions enumerated in Evid. R. 404(B). The fact that Mr. Havely had previously assaulted and injured Thomas, however, would be admissible because it may tend to show that Thomas had a retributive motive to intentionally injure Mr. Havely. Likewise, *Page 17 
the fact that Kendricks admitted lying to a polygraph examiner when he thought that the truth would reveal his failure to exercise a certain degree of care, is relevant to Kendricks' propensity to tell the truth or to not tell the truth. Now we must determine whether these pieces of evidence, along with the other circumstances attendant to Thomas' and Kendricks' testimony, serve to meet appellants' reciprocal burden under Civ. R. 56(E) to show that reasonable minds could come to more than one conclusion as to whether either appellee assaulted Mr. Havely.
 {¶ 36} "A court cannot weigh credibility when considering evidentiary material presented in favor of, or in opposition to, a summary judgment motion." Whiteside v. Conroy, Franklin App. No. 05AP-123, 2005-Ohio-5098, ¶ 75, citing Killilea v. Sears, Roebuck Co. (1985),27 Ohio App.3d 163, 27 OBR 196, 499 N.E.2d 1291. Thus, "the credibility of an affiant is not generally considered when a court determines whether genuine issues of material fact exist * * * [and] a court should not choose among reasonable inferences or weigh the credibility of witnesses in deciding whether summary judgment is appropriate." Hassan v.Progressive Ins. Co. (2001), 142 Ohio App.3d 671, 676, 756 N.E.2d 745. These are jury functions, not those of a judge ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,255, 106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 37} However, this district's precedent contains a line of cases in which we have, in certain circumstances, applied the principle that "[i]f an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed inorder to resolve the issue, and the surrounding circumstances place thecredibility of the witness in question — for example, where the potential for bias and *Page 18 
interest is evident — then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness." (Emphasis added.) Killilea, supra, at 167, citing Duke v.Sanymetal Products Co. (1972), 31 Ohio App.2d 78, 83, 60 O.O.2d 171,286 N.E.2d 324.
 {¶ 38} For example, in Pearce v. Fouad, 146 Ohio App.3d 496,2001-Ohio-3986, 766 N.E.2d 1057, this court reversed a directed verdict as to liability in favor of the plaintiff in a products liability action in which the evidence demonstrated that one of two fans in the plaintiff's home was the source of a house fire that caused the plaintiff's injuries. The only evidence as to which fan caused the fire was the plaintiff's mother's testimony that the fan not manufactured by the defendant was inoperable on the date in question. We explained:
 [Credibility concerns can also be present where the evidence supporting the party moving for a directed verdict appears to be uncontroverted. This will be the case where the resolution of a factual issue raised on a motion for a directed verdict turns on uncontroverted testimony, but the circumstances surrounding the testimony place the testifying witness' credibility in question. For example, uncontroverted testimony may be disbelieved where the witness has an interest in the litigation, the witness' story is improbable, or there are contradictions in the witness' testimony.
 Here, while we make no pronouncement whatsoever regarding the credibility of plaintiff's mother, it is clear that she has a significant interest in the outcome of this litigation. Accordingly, her credibility on the issue of the inoperability of the smaller fan was a question which should have been resolved by the jury.
(Citations omitted.) Id. at 502.
 {¶ 39} In Chickey v. Watts, Franklin App. No. 04AP-818,2005-Ohio-4974, the plaintiff was injured in an accident that occurred while she was riding on a motorcycle *Page 19 
driven by defendant Watts. Among others, the plaintiff sued Indiana Insurance Company ("Indiana"), alleging that it was liable under an uninsured/underinsured motorist ("UM/UIM") automobile insurance policy issued to Watts' employer. Indiana filed a counterclaim and cross-claim, seeking a declaratory judgment that it had no liability under the policy because Watts was not acting within the scope of his employment as a reupholsterer at the time of the accident.
 {¶ 40} The trial court granted the plaintiffs' and Watts' motions for summary judgment as to Indiana's claims for declaratory judgment, concluding that Watts was acting within the scope of his employment. The court based its decision on Watts' unrebutted affidavit, in which he averred that his purpose was to act on behalf of his employer at the time of the accident, and he was not acting on his own behalf as an independent contractor. Specifically, he testified that when the accident occurred, he was on his way to the plaintiff's grandmother's home so that Watts could look at her furniture and give her an estimate for reupholstery work.
 {¶ 41} Indiana appealed, and this court reversed. We reasoned that the issue of whether Watts was acting in the scope of his employment at the time of the accident turned on Watts' credibility, because the trier of fact must believe Watts' testimony about his intentions on the night of the accident in order to resolve the issue in the moving parties' favor. We noted that circumstances called Watts' credibility into question. We recognized Watts' interest in seeing that the plaintiff, who was his fiancée and the mother of his child, be compensated for her injuries. We also noted that Watts and the plaintiff had been engaged in social activities on the evening of the accident, and the accident occurred outside of normal business hours; both of these facts called into question Watts' *Page 20 
truthfulness about whether he was working on his employer's behalf at the time. We determined that under those circumstances, because resolution of the issue turned exclusively on whether Watts was believed, and because Watts was the only one who possessed knowledge of his intentions on the night of the accident, summary judgment was inappropriate.
 {¶ 42} In the case of Hassan, supra, the plaintiff sought a declaration that she could recover under her UM/UIM policy for injuries she and her sister sustained when she was allegedly forced off of the road by an unidentified vehicle with which her vehicle made no physical contact. The trial court refused to grant the plaintiff summary judgment on her claim, even though she presented her sister's unrebutted corroborative affidavit, in which she averred that the plaintiff was indeed run off of the road by an unidentified vehicle.
 {¶ 43} We affirmed the trial court's refusal to grant summary judgment to the plaintiff, reasoning that because the plaintiff's sister must be believed in order to resolve the issue whether the two were run off the road by another vehicle, the nonmoving party had no means to rebut the testimony with any other witness testimony, and because the potential for the plaintiff's sister's bias or interest was evident, the issue was properly resolved by the trier of fact, notwithstanding the fact that the sister's testimony was uncontroverted.
 {¶ 44} In the present case, with respect to Kendricks, resolution of the key issue raised by the motion for summary judgment, i.e., whether Kendricks assaulted Mr. Havely, turns solely on Kendricks' uncontroverted testimony that he did not. We make no pronouncement as to Kendricks' credibility. However, under the foregoing line of cases, *Page 21 
Kendricks' obvious interest in the outcome of the litigation, the evidence that he and Mr. Havely engaged in physical contact in Mr. Havely's room on at least one occasion on the evening in question, and the fact that Kendricks lied to a police polygraph technician in order to minimize the appearance that he neglected Mr. Havely, sufficiently call into question Kendricks' credibility such that appellants met their reciprocal burden under Civ. R. 56(E) to show that reasonable minds could come to different conclusions as to whether Kendricks assaulted Mr. Havely. For this reason, summary judgment in favor of Kendricks on the intentional tort claim was inappropriate.
 {¶ 45} It is a far less tenable proposition that the facts invoked by appellants with respect to Thomas truly call into question her uncontroverted testimony that she did not injure Mr. Havely. The fact that Thomas has an interest in terminating the litigation short of trial, coupled with her alleged motive to assault Mr. Havely, without more, do not sufficiently call Thomas' credibility into question so as to preclude summary judgment on the issue. The record contains no evidence that Thomas had an opportunity to assault Mr. Havely undetected. Despite the fact that other residents and staff were present during Thomas' shift, there is nothing in the record to show that Thomas was ever alone with Mr. Havely on the day in question (in his room or otherwise), and Kendricks' testimony establishes that while Kendricks was engaged in recordkeeping during that evening, Thomas was not with Mr. Havely, but was cleaning the common areas of the apartment, after which her shift ended and Kendricks remained. Granting summary judgment to Thomas did not constitute a choice among reasonable inferences as to whether or not Thomas assaulted Mr. Havely. *Page 22 
 {¶ 46} Appellants have met their reciprocal burden of demonstrating the existence of a genuine issue of material fact as to the issue whether Kendricks intentionally injured Mr. Havely; thus, their intentional tort claim against Kendricks should not have been dismissed on summary judgment. However, the circumstances surrounding Thomas' uncontroverted testimony do not call her credibility into question to the extent that granting summary judgment to her constitutes an inappropriate credibility determination. Accordingly, we sustain appellants' first assignment of error insofar as it argues that the trial court erred in granting Kendricks summary judgment on appellants' claim for intentional battery, and we overrule it with respect to Thomas.
 {¶ 47} In their second assignment of error, appellants argue that the trial court erred in granting summary judgment to FCMRDD with respect to appellants' second claim. For this claim, the first amended complaint states that when Thomas and Kendricks assaulted Mr. Havely, they "recklessly, wantonly, and maliciously" breached their "duty to protect [Mr. Havely's] physical well being, not cause him physical harm, and ensure his safety." (First Amended Complaint, ¶ 13.) Appellants argue that the trial court erred in determining that FCMRDD is statutorily immunized from liability for the harm alleged in the second claim.
 {¶ 48} "The process of determining whether a political subdivision is immune from liability involves a three-tiered analysis." Elston v.Howland Local Schools, 113 Ohio St.3d 314, 2007-Ohio-2070,865 N.E.2d 845, ¶ 10. The first tier provides a general grant of immunity, stating that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a *Page 23 
governmental or proprietary function." R.C. 2744.02(A)(1). In this case, it is undisputed that Franklin County, and thus its agency, FCMRDD, is a political subdivision. Therefore, the general grant of immunity contained in R.C. 2744.02(A)(1) applies in this case.
 {¶ 49} The second tier in an immunity analysis focuses on the exceptions to immunity located in R.C. 2744.02(B). Finally, in the third tier of the analysis, immunity may be reinstated if a political subdivision can successfully assert one of the defenses to liability listed in R.C. 2744.03. See Cater v. City of Cleveland,83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610.
 {¶ 50} Appellants maintain that there are genuine issues of fact as to whether the exceptions contained in R.C. 2744.02(B)(4) and (5) apply to strip FCMRDD of its general grant of immunity. The version of R.C. 2744.02(B) that applies to this case provides, in pertinent part, as follows:
 (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
 (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued. *Page 24 
(Emphasis added.)
 {¶ 51} In their brief, appellants reiterate that their theory is based on their allegation that "[FC]MRDD's employees inflicted the injuries to [Mr. Havely] * * *." (Brief of Appellants, 21.) FCMRDD counters that R.C. 2744.02(B)(4) applies only to negligence claims, not to assault or other intentional tort claims, and that political subdivisions are immune from liability for intentional acts of their employees. It cites the case of Wilson v. Stark Cty. Dept. of Human Servs.,70 Ohio St.3d 450, 1994-Ohio-394, 639 N.E.2d 105, in which the Supreme Court of Ohio held that there are no exceptions to a political subdivision's immunity for fraud and intentional infliction of emotional distress. It also cites the case of Featherstone v. City of Columbus, Franklin App. No. 06AP-89, 2006-Ohio-3150, discretionary appeal not allowed,111 Ohio St.3d 1417, 2006-Ohio-5083, 854 N.E.2d 1094, in which this court stated, "[b]ecause R.C. 2744.02(B) contains no specific exception for intentional torts, Ohio courts have consistently held that political subdivisions are immune from intentional tort claims." The Supreme Court of Ohio has also stated that R.C. 2744.02(B)(1) through (4) is limited to negligence actions. Cramer v. Auglaize Acres, 113 Ohio St.3d 266,2007-Ohio-1946, 865 N.E.2d 9, ¶ 19.
 {¶ 52} In response, appellants argue that R.C. 2744.02(B)(4) does indeed apply to intentional tort claims, and they cite R.C. 2744.03(A)(6)(a) and (b), which strip individual employees of immunity when their actions are "manifestly outside the scope" of their employment or done "with malicious purpose." However, we fail to see how R.C. 2744.03(A)(6), which, by its express terms, only applies to individual employees, not to *Page 25 
political subdivisions, bears upon whether R.C. 2744.02(B) strips political subdivisions of immunity for their employees' intentional torts.
 {¶ 53} Appellants also direct our attention to cases in which courts have held that R.C. 2744.02(B)(4) applies to strip political subdivisions of immunity in connection with assaults.[2] However, those cases all involve negligence claims, not claims such as appellants', where it is alleged that the political subdivision's employees committed the assaults.[3] It is clear that R.C. 2744.02(B)(4) does not apply to claims for intentional torts committed by employees of a political subdivision. Thus, it does not operate to strip FCMRDD of liability as to appellants' second claim.
 {¶ 54} Appellants also argue that FCMRDD is stripped of its immunity because R.C. 5123.62, the "[b]ill of rights for persons with mental retardation or a developmental disability," specifically imposes civil liability upon FCMRDD, within the meaning of R.C. 2744.02(B)(5). For support of this proposition, appellants cite Cramer, supra. In that case, the Supreme Court of Ohio held that R.C. 2744.02(B)(5) applied to strip the political subdivision of immunity because the Ohio Nursing Home Patients' Bill of Rights expressly imposed liability. *Page 26 
 {¶ 55} However, the Nursing Home Patients' Bill of Rights statute, R.C. 3721.17(I) specifically authorizes a civil action against both the individual tortfeasor and the "home" in which the plaintiff was injured. Thus, a cause of action against a political subdivision that operates a nursing home is expressly permitted. By contrast, R.C. 5123.64, the statute that provides for remedies for violations of the bill of rights for persons with mental retardation or a developmental disability, contains no specific authorization for the bringing of a suit against political subdivisions that operate facilities for the mentally retarded. Former R.C. 2744.02(B)(5) prohibits construing liability to exist solely because a statute imposes a responsibility or mandatory duty upon a political subdivision. Moreover, the Supreme Court of Ohio has observed that no section of the Ohio Revised Code expressly imposes liability upon a public agency for the failure to perform the duties enumerated in R.C. 5123.62. Estate of Ridley v. Hamilton Cty. Bd. ofMental Retardation and Dev. Disabilities, 102 Ohio St.3d 230,2004-Ohio-2629, 809 N.E.2d 2. From all of this, we conclude that FCMRDD is not stripped of its immunity under R.C. 2744.02(B)(5).
 {¶ 56} Finally, appellants argue that FCMRDD is not immune from liability with respect to appellants' fourth claim, in which they allege that FCMRDD "recklessly, wantonly, maliciously, and in bad faith entrusted, trained, supervised, and otherwise exercised their discretion regarding personnel * * *"[4] Specifically, appellants argue that FCMRDD loses its immunity pursuant to R.C. 2744.03(A)(5), which provides:
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or *Page 27 
proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 57} As we noted earlier, R.C. 2744.03 provides defenses with which a political subdivision may re-establish its immunity after having it stripped pursuant to one of the exceptions in R.C. 2744.02(B). That statute is not part of the second tier of analysis mentioned earlier; that is, it does not provide additional means by which a plaintiff may strip a political subdivision of the initial grant of immunity conferred by R.C. 2744.02(A)(1). For all of the foregoing reasons, we find no merit in appellants' second assignment of error, and the same is overruled.
 {¶ 58} In summary, appellants' first assignment of error is sustained in part and overruled in part, and their second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings, consistent with law and with this opinion, with respect to appellants' claims for intentional battery, intentional infliction of emotional distress, and loss of consortium against Kendricks.
Judgment affirmed in part, reversed in part; cause remanded.
BROWN and TYACK, JJ., concur.
[1] Neither the trial court in its decision and entry, nor the parties on appeal, specifically discuss evidence relating to the intentional infliction of emotional distress claim; it appears that all involved presumed that the intentional infliction of emotional distress claim hinges on proof that the individual appellees assaulted Mr. Havely. Therefore, we, too, will proceed in this manner.
[2] Appellants cite Williams v. Columbus Bd. of Edn. (1992),82 Ohio App.3d 18, 610 N.E.2d 1175; Marcum v. Talawanda City Schools (1996),108 Ohio App.3d 412, 670 N.E.2d 1067; and Anderson v. Indian Valley SchoolDist. Bd. of Edn., Tuscarawas App. No. 1998AP12-123, discretionary appeal not allowed (1999), 86 Ohio St.3d 1442, 713 N.E.2d 1052.
[3] In their reply brief, appellants argue, for the first time, that R.C. 2744.02(B)(4) applies because Thomas and Kendricks were negligent in failing to ensure Mr. Havely's safety "if someone other than the individual Appellees committed the assault against [Mr.] Havely * * *." (Reply Brief, 9.) Under this "alternative set of possible facts," appellants argue that their second claim, against FCMRDD, should survive summary judgment. Id. However, review of the first amended complaint, appellants' memoranda contra to the appellees' motions for summary judgment, and appellants' brief in this court, reveals that appellants have consistently maintained that the conduct of which appellants complain is intentional battery, not negligence. See State ex rel.Gutierrez v. Trumbull Cty. Bd. of Elections (1992), 65 Ohio St.3d 175,177, 602 N.E.2d 622 ("Appellant cannot change the theory of his case and present these new arguments for the first time on appeal.").
[4] We note that the trial court granted FCMRDD summary judgment on appellants' claims of negligent hiring, training, and supervision based upon the affidavits of FCMRDD's human resources director and its director of operations, and appellants have not challenged that determination on appeal. *Page 1