[Cite as *Medley v. BMI Fed. Credit Union*, 2026-Ohio-1525.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carl Medley, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 25AP-632 |
| v. | : | (C.P.C. No. 23CV-6013) |
| BMI Federal Credit Union, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 28, 2026

**On brief:** *Carl Medley*, pro se. **Argued:** *Carl Medley.*

**On brief:** *Kegler, Brown, Hill & Ritter, Maria Mariano Guthrie*, and *Peter W. Stoecklein*, for appellee. **Argued:** *Maria Mariano Guthrie.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Carl Medley, appeals from the July 9, 2025 judgment of the Franklin County Court of Common Pleas, which overruled his objections to the April 8, 2025 magistrate's decision awarding attorney fees to defendant-appellant, BMI Federal Credit Union ("BMI").[1] These proceedings followed the trial court's March 17, 2025 decision and entry, which granted BMI's motion for summary judgment both on Medley's claims

---

[1] Also pending before this court is a motion by Medley, requesting this court to take judicial notice of BMI's "contradictory positions in related case No. 24CV-7698 and supplemental authority regarding credibility." (Nov. 6 2025 Appellant's Mot. for Judicial Notice.) We strike this filing as an untimely attempt to expand the record on appeal. "The court of appeals does not accept new evidence on appeal that is offered to expand upon the record of evidence heard by the trial court, or otherwise offered to support or rebut the adjudicative facts determined by the trial court." Loc.R. 9.1 (Submission of Evidence on Appeal.)

and on its own counterclaim, denied Medley's motion for summary judgment, and referred BMI's request for attorney fees back to the magistrate for hearing and determination.

{¶ 2} In February 2022, Medley obtained a $171,000 loan from BMI for the purchase of a 2018 Audi R8 automobile. Medley was frequently late to make loan payments during the period of the loan, and in February 2023 he suggested to BMI that he might need to sell the vehicle. He eventually decided to sell the vehicle to a company known as "Auto Assets" for $127,000 and was expected to execute a new personal loan with BMI for approximately $21,500 to cover the remaining deficiency. He returned a new loan application to BMI, but that personal loan was never closed—although he signed and returned the loan, Medley rejected the loan payment terms. He then began to claim that the sale to Auto Assets satisfied his debt to BMI entirely, based on BMI's alleged acceptance of the $127,000 sale amount. In response, BMI notified Medley that it was voiding their tentative verbal agreement and repossessing the car instead of accepting the proceeds of the sale. It did so, and the car was subsequently sold at auction for $123,000.

{¶ 3} Medley, acting pro se, sued BMI. He contended that he had been defrauded, that the repossession had been "under questionable circumstances and followed by exposure to damaging elements," that he was not liable for any of the deficiency, that he was due a refund of all of his previously-made payments because BMI had wrongly repossessed the vehicle, that BMI's actions had caused him wrongful emotional distress, and that he was entitled to punitive damages. Exhibits attached to his complaint reveal that Medley maintained that the repossession had been taken prior to the expiration of a 30-day late grace period and that he had not been given a chance to cure the default. BMI filed an answer and counterclaim, and argued that Medley was repeatedly in default on the loan, had breached his loan contract, that his action in filing suit against them was frivolous, that

it was factually unsupported and unsupportable, and that it was in violation of R.C. 2323.51. BMI claimed it was entitled to an award of the amount of loan deficiency plus costs, as well as an award of the costs of unnecessary litigation caused by defending against Medley's claims, including attorney fees.

{¶ 4} Medley filed numerous motions during the litigation, the vast majority of which were deemed meritless and procedurally improper. (*See, e.g.*, Oct. 19, 2023 Mot. to Amend Ad Damnum to Increase Punitive Damages to $20 Million, and Feb. 21, 2024 Motion: Sanctions.) He also filed an interlocutory appeal of the trial court's denial of his motion for default judgment, which was dismissed for lack of a final order. (*See* Mar. 7, 2024 Journal Entry of Dismissal filed in *Medley v. BMI Federal Credit Union*, 10th Dist. No. 24AP-136.)

{¶ 5} Medley filed a motion for summary judgment in this case on August 6, 2024, arguing that BMI had provided him the original loan despite its awareness that the purchase price of the vehicle exceeded its value, that BMI repeatedly accepted payments up to 55 days after they were due, that BMI never issued a warning accelerating the due date for the payments, that the loan contract did not include an anti-waiver clause and that therefore BMI was now obligated to accept his late payments as a result of its course of dealings with him, that BMI had misled him about the sale of the car to Auto Assets and that it had "indicat[ed]" to him that it would accept the highest offer available for the auto as a "short sale arrangement but not calling it a short sale" alleviating his responsibility for the deficiency, and that when BMI accepted a check from Auto Assets for $127,000 it had forfeited its right to pursue him for the loan deficiency, despite the fact that it immediately voided the Auto Assets check "on the heels of [Medley's] refusal to acquiesce to BMI's proposal of an exorbitant second transaction personal loan." (Aug. 6, 2024 Pl.'s Mot. for

Summ. Jgmt. at 6.)  Medley filed a second motion for summary judgment on September 9, 2024, arguing that alleged deficiencies in BMI's discovery answers required the trial court to issue judgment in his favor.  (Mot. for Summ. Jgmt.)

{¶ 6}  BMI had scheduled a deposition of Medley for September 4, 2024, but Medley initially refused to appear for an in-person deposition on that date, ostensibly because BMI "did not ask me what my schedule is or if I'm available [and] I will not come to your offices."  (Aug. 19, 2024 Def.'s Expedited Mot. to Compel, Ex. 1-B.)  The trial court subsequently ordered Medley to appear for an in-person deposition.  (Aug. 30, 2024 Entry.)

{¶ 7}  BMI deposed Medley on October 10, 2024.  At that time, he affirmed all of the following: that the listed cash sale price of the Audi when he purchased it was $160,000, (Oct. 10, 2024 Depo. of Carl E. Medley, Jr. at 66); that he had traded in his Porsche (which he had previously financed with BMI) to purchase the Audi, *id.* at 66-67; that he received a trade-in allowance for the Porsche of $62,000 less the loan balance owed to BMI, *id.*; that he had a balance of $59,000 owed to BMI on the Porsche at the time he purchased the Audi, *id.*; that the financed cost of the Audi would have been $171,340, *id.*; that he entered into a new loan agreement with BMI for that amount, *id.* at 69-75; that BMI took a security interest in the Audi as part of the loan agreement, *id.* at 72; that there was to be a late fee added to loan payments made more than ten days after the due date, *id.* at 73-74; that BMI was not a party to his sales agreement with Auto Assets, *id.* at 82; that BMI "accepted late payments constantly" despite the fact that "in their loan document, it says that any default, even by a day, they can take the vehicle," *id.* at 84; that he was repeatedly late on payments prior to the repossession of the vehicle and that he was late at the time of the repossession, *id.* at 85-88; and that he was aware that he owed more on the loan to BMI than he would receive from the sale to Auto Assets, *id.* at 95-96; and that despite the fact that BMI never

specifically agreed to a "short sale," he believed that by accepting the plan to sell the car to Auto Assets and accepting the amount that Auto Assets paid for the car, BMI had engaged in a "short sale" and he was no longer obligated to pay the deficiency on the loan. *Id.* at 100-105. BMI then filed a motion for summary judgment on Medley's claims and on its own counterclaim, arguing that Medley's deposition established that he had "initiated this lawsuit in an attempt to avoid his contractual obligations to pay the deficiency on the loan." (Def.'s Mot. for Summ. Jgmt. at 2.) The magistrate subsequently issued an order specifically denying Medley's objections to his deposition. (Oct. 4, 2024 Mag.'s Order.)

{¶ 8} The trial court's March 17, 2025 summary judgment decision granted BMI summary judgment on Medley's claims—that he was exempt from paying the deficiency based on BMI's fraud, that BMI waived its right to claim breach by its course of dealing in accepting late payments and that BMI's loan agreement did not contain an anti-waiver clause, that he was entitled to reimbursement of his payments, that he suffered emotional distress as a result of BMI's actions, and that he was entitled to punitive damages. (Mar. 17, 2025 Decision & Entry at 3-4.) The trial court denied Medley's motion for summary judgment on his claims, *id.* at 5, and granted BMI summary judgment on its counterclaim— awarding BMI the loan deficiency balance of $25,782.85 plus unpaid interest, repossession fees of $350, and attorney fees. *Id.* at 6. The trial court referred the matter back to the magistrate for a hearing to determine the amount of attorney fees Medley owed to BMI. And after that hearing, the magistrate issued an order awarding BMI fees in the amount of $151,431.25 and deposition costs in the amount of $1,829.55. (Apr. 8, 2025 Mag.'s Decision at 5.)

{¶ 9} Medley then filed objections and a motion to strike the magistrate's decision, but on July 9, 2025 the trial court issued a decision overruling both his motion to strike and

his objections. The trial court observed that Medley had not filed a transcript of the attorney fees hearing, and that he had not objected to the admission of BMI's billing exhibits at the hearing. (July 9, 2025 Entry at 1-3.) The trial court concluded that "there is no error of law or other defect evident on the face of the Magistrate's Decision, nor any merit to [Medley]'s objections," and adopted the magistrate's decision in its entirety. *Id.* at 3.

{¶ 10} Medley now appeals and asserts nine assignments of error. He contends that

- the trial court erred in granting summary judgment to BMI;

- the court failed to consider evidence suggesting that a negotiated sale price of the vehicle for $127,000 was for the full value of the automobile and was in "full satisfaction" of Medley's loan, even though that sale was not completed;

- BMI's motion for summary judgment had been filed late and the court erred by considering and granting it;

- that the court wrongly considered and granted BMI's motion for summary judgment without first addressing "unresolved discovery disputes";

- the court erred by interpreting BMI's loan contract language to contain an anti-waiver clause;

- the court erred by relying on Medley's own deposition to conclude he had not presented evidence of emotional distress;

- the court had violated his right to due process by failing to consider "critical and newly discovered evidence" and by determining that several of his motions were moot;

- the court violated his right to due process by treating his "supplemental statement of relief" as an amended complaint; and

- the court had violated his right to due process by deciding the cross-motions for summary judgment without first ruling on his motion for a preliminary injunction and motion to amend his motion to dismiss.

Medley also argues that his deposition was "compromised" because he had not been provided certain discovery prior to the deposition, and because he had not been provided certain unspecified accommodations he contends were required to be given to him pursuant to The Americans with Disabilities Act.

{¶ 11} We must begin by observing that Medley has not raised a single argument either in his brief or in his reply brief regarding the *amount* of attorney fees awarded to BMI by the trial court. Additionally, we will address Medley's assignments of error together, as they overlap with each other and do not encompass all of the arguments presented in his briefing.

{¶ 12} Medley believes that the trial court erred by failing to specifically rule on all of his motions prior to ruling on summary judgment, by granting BMI summary judgment on its claims, and by granting BMI summary judgment on Medley's own claims. Summary judgment may be granted under Civ.R. 56(C) when there remains no genuine dispute of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, adverse to the party opposing the motion. *See, e.g.*, *Franks v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-1519, ¶ 5 (10th Dist.). "[T]he moving party bears the initial burden of *demonstrating* that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis in original.) *Dresher v. Burt*, 1996-Ohio-107, ¶ 17. The moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support each element of the stated claims. *Franks* at ¶ 15. The non-moving party must then rebut with specific facts showing the existence of a genuine probable issue and may not rest on the mere allegations in their pleadings. *Chase Home Fin., LLC v. Dougherty*, 2013-Ohio-1464, ¶ 10 (10th Dist.) If any doubt exists, the issue must be resolved in favor of the nonmoving

party.  *Id.*  Only factual disputes that might affect the outcome of the suit under the governing law will preclude the entry of a summary judgment.  *Havely v. Franklin Cty.*, 2008-Ohio-4889, ¶ 32 (10th Dist.). Moreover, we observe the rule that where a trial court " 'fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled,' " and " 'the fact that a court fails to expressly rule on a motion does not constitute an abuse of discretion.' "  *Columbus v ACM Vision, V, L.L.C.*, 2021-Ohio-925, ¶ 22 (10th Dist.)*,* quoting *Siemientowski v State Farm Ins. Co.,* 2005-Ohio-4295, ¶ 39 (8th Dist.).

{¶ 13} On review of the record, pleadings, and the undisputed and admissible evidence submitted, we have little trouble concluding that BMI was entitled to summary judgment, both on Medley's claims and on its own counterclaim.

{¶ 14}  First, although some of the exhibits to BMI's motion for summary judgment were indeed filed a day late resulting from a technical error in filing, the body of the motion itself was timely filed.  The trial court had full discretion to consider both the motion and the exhibits, and Medley cannot show that he was unduly prejudiced by the court's decision to do so.

{¶ 15}  Next, the trial court was absolutely correct in concluding that the BMI loan agreement contained an anti-waiver provision and that BMI had discretion to accept late payments.  The agreement specifically provides that BMI "can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later." (*See* Loan & Sec. Agreements & Disclosure Statement, attached as Ex. 1 to Pl.'s Sept. 25, 2023 Answer to Am. Compl. & Countercl. of Def. at 3.)  Medley claims that this is not an anti-waiver clause, but provides no basis for this assertion other than the fact

that it is not labeled as such. It is self-evident that this contract language permits BMI to accept late payments without waiving its right to demand timely payments in the future.

{¶ 16} As to his claim of fraud, Medley's pleading is less than clear. *Compare* Civ.R. 9(B) (stating that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.") Medley generally alleged that BMI engaged in fraud when it told him that it had "voided" the arrangement with Auto Assets and that Auto Assets had agreed to void the sale. But there is no evidence in the record to support this claim. Medley instead relies on idiosyncratic and self-serving interpretations of verbal statements made by BMI's loan collections manager, Jason Rigano. But those statements are explained and Medley's interpretations of them are refuted by Rigano's own affidavit.

{¶ 17} Rigano's affidavit clearly establishes that BMI agreed to allow Medley to sell the car and would offer him a personal loan to the cover the deficiency, that Medley verbally agreed to this plan and completed loan application paperwork, that Medley dropped off the car at Auto Assets and completed a separate sale agreement with Auto Assets without the participation of BMI, that Medley then refused to pursue the personal loan once he learned what the interest rate would be, and that Medley claimed that because Auto Assets unilaterally transmitted a payment $127,000.00 to BMI that BMI's security interest had been forfieted, and that Medley "was not responsible for any deficiency" because "he had a 'short sale' agreement with BMI." (Aff. of Jason Rigano, attached as Ex. 2 to Def.'s Dec. 13, 2024 Mot. for Summ. Jgmt. at ¶ 24-26.) But Rigano's affidavit also established that crucially, "[b]ecause Mr. Medley refused to complete an agreement with BMI and was still in default of his obligations, *BMI did not accept the payment for the vehicle, since it was*

*less than the full amount of the loan*, and then repossessed the vehicle on August 17, 2023."
(Emphasis added.) *Id.* at ¶ 26.

{¶ 18} Medley has offered nothing to refute Rigano's statements, although he has the affirmative burden of showing that BMI's claims could not be supported in the evidence. *See generally Dresher*, 1996-Ohio-107. Instead, Medley simply contends that because BMI was not a party to the contract for sale between himself and Auto Assets, it had no authority to "void" the deal. But he has not argued (and indeed cannot argue) that BMI was required to accept a partial payment on the loan as an accord-and-satisfaction of the entire loan amount. BMI was completely within its contractual rights to refuse that payment, withhold its required consent to the sale of the Audi, repossess it, sell it at auction, and pursue Medley for the deficiency amount. The fact that Rigano may have used the term "void" in describing BMI's actions relating to the Medley-Auto Assets sale does not ipso facto make BMI's actions into some unspecified kind of fraud, nor does it establish that BMI was required to accept Auto Assets' partial payment as satisfaction for Medley's obligations on his remaining debt to BMI.

{¶ 19} Likewise, Medley's idiosyncratic arguments that his deposition was "compromised" lack any merit. Regarding The Americans with Disabilities Act, Medley seems to suggest that because he had a stroke that he should have been allowed to refer to notes during the deposition. He offers no authority for this claim, and more importantly he has not set forth any particular way in which his testimony might have been altered had he been able to rely on such notes, nor has he shown that the testimony he did provide was unknowingly incorrect or false.

{¶ 20} Next, Medley argues the fact that BMI's agents had spoken to Auto Assets and that Rigano indicated to him that Auto Assets had agreed to "void" the sale establishes some

sort of illegal collusion or action. We disagree. Even if Rigano had outright lied to Medley about this fact—an allegation without any evidentiary support—Medley cannot show that he was harmed in any way. BMI was under no obligation to accept Medley's attempt to use his agreement with Auto Assets to avoid payment of his outstanding debt to BMI, whether or not the sale to Auto Assets was completed. And given BMI's security interest in the Audi, BMI's consent to the sale was required as a matter of practicality even if it was not required as a matter of law.

{¶ 21} Finally, the motions that Medley complains were unresolved were, in accordance with caselaw, denied by implication. Medley has not made any attempt to argue he was unfairly denied access to any of the documents or other evidence required to support his claims of fraud—rather, he has simply misinterpreted the evidence that he does have in ways that support his arguments. None of those motions—for sanctions, for contempt, to increase his damages—could have been meritorious, as they are all derivative from his underlying causes of action, for which he wholly lacks evidentiary support.

{¶ 22} Throughout this case, Medley has advanced novel and irrational interpretations of the law in a futile attempt to avoid a debt he clearly and undeniably owes. Had Medley simply negotiated in good faith regarding the deficiency rather than rashly and foolhardily pursuing the underlying lawsuit, he might well have been able to avoid the unenviable position in which he now finds himself.

{¶ 23} On review, we conclude that all of Medley's assigned errors clearly lack merit and are overruled. We affirm the trial court's decision in its entirety and strike his motion for judicial notice pursuant to Loc.R. 9.1.

*Judgment affirmed*;
*motion for judicial notice stricken.*

DORRIAN and JAMISON, JJ., concur.

_____